UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

ANDREW McKEVITZ,

    Plaintiff,

v.

CAPITAL ALLIANCE GROUP,
CAPITAL ALLIANCE PARTNERS,
LLC, NARIN CHARANVATTANAKIT
aka NARIN CHARAN and MARK
MENDOZA

    Defendants.

Case No: 3:18-cv-00131-JRG-HBG

PLAINTIFF'S RULE 26(f) REPORT AND CASE MANAGEMENT STATEMENT

Counsel for Plaintiff Andrew McKevitz ("Plaintiff") participated in the Fed. R. Civ. P. 26(f) conference on June 19, 2018, pursuant to the Court's May 21, 2018 Order (Dkt No. 20) and submit the following Plaintiff's Case Management Statement reflecting the matters on which they agree and expressing their respective views concerning the issues on which they disagree.

I. **NATURE AND BASIS OF CLAIMS AND DEFENSES**

    A. **Plaintiff's Contentions**

As described in Plaintiff's response to the Defendants' currently pending motion to transfer venue.

    B. **Plaintiff's Contentions**

Plaintiff Andrew McKevitz ("McKevitz") brings this Complaint for damages relating to violations of the Telephone Consumer Protection Act, 47 U.S.C § 227 et seq., ("TCPA"), resulting from illegal actions of the Defendants, in negligently, and/or willfully contacting Plaintiff through "robocalls" (calls using an automatic telephone-dialing system without prior express consent) and/or other means. Defendants Capital Alliance Group and Capital Alliance Partners, LLC engaged in telemarketing utilizing robocalls and other forms of telephone solicitation that violated Mr. McKevitz's privacy rights pursuant to the TCPA. Defendants Narin Charanvattanakit aka Narin Charan ("Charan") and Mark Mendoza ("Mendoza") personally directed the violations of the TCPA for their own benefit and are thus personally liable for the violations.

Mr. McKevitz also brings an action against Defendant Defendant Narin Charanvattanakit aka Narin Charan ("Charan") for libel based upon a knowingly false statement with reckless disregard to the truth in a Facebook post.

Defendants deliberately decided to engage in bulk marketing by using an automatic telephone-dialing system to place robocalls to potential customers. Over the course of an extended period beginning no later than April of 2015, Defendants and its agents directed a mass

transmission of robocalls to cell phones of persons they hoped were potential customers of Defendants' services. On or about April 13, 2015, Mr. McKevitz received an unsolicited robocall from Defendants to his wireless telephone in Tennessee. Mr. McKevitz has previously registered his cellular telephone number ending in -5310 on the National Do-Not-Call List in order to eliminate telemarketing calls. It stated that the call was from Capital Alliance and was soliciting lending services. Mr. McKevitz received twenty-three (23) additional calls from Defendants and/or their agents on May 14, 2015, May 18, 2015, May 21, 2015, June 5, 2015, October 2, 2015, October 9, 2015, December 4, 2015, March 22, 2016, June 27, 2016, January 27, 2017, February 9, 2017, April 6, 2017, May 2, 2017, May 4, 2017, June 13, 2017, June 21, 2017, July 26, 2017, September 1, 2017, October 2, 2017, November 3, 2017, November 29, 2017 and November 30, 2017.

Plaintiff provided no consent to receive these calls, which were made by Defendants in an effort to promote the sale of lending services. The unsolicited phone calls were placed to Mr. McKevitz's cellular telephone via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1).

The telephone numbers to which the Defendants, or its agents, placed the robocalls were assigned to cellular telephone services pursuant to 47 U.S.C. § 227(b)(1)(A)(iii). Mr. McKevitz did not provide the Defendants or its agents express consent to receive unsolicited robocalls pursuant to 47 U.S.C. § 227(b)(1)(B). The calls by Defendants or its agents therefore violated 47 U.S.C. § 227(b)(1). Each such robocall was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or a system that otherwise qualified as an automatic telephone dialing system under the TCPA. By using such equipment, Defendants were able to effectively place thousands of robocalls to thousands of wireless phone numbers of consumers without human intervention. These calls were made without prior consent of Mr. McKevitz.

Page 2 of 9

Case 3:18-cv-00131-JRG-HBG   Document 28   Filed 07/03/18   Page 3 of 10   PageID #: 168

The foregoing acts and omissions of Defendants and its agents violated 47 U.S.C. § 227 et seq. As a result of the violations of 47 U.S.C. § 227 et seq., Mr. McKevitz is entitled to an award of $500.00 in statutory damages for each violation pursuant to 47 U.S.C. § 227(b)(3)(B). Upon information and belief, Defendants' violations of TCPA were willful and/or knowing. Accordingly, should the Court find that the violations were willful rather than negligent, Mr. McKevitz is entitled to have the award increased to an amount not more than three (3) times the $500.00 liquidated damages amount, or $1,500.00 per violation, pursuant to 47 U.S.C. § 227(b)(3)(B and C).

TCPA provides additional statutory damages based upon subscriber privacy rights pursuant to 47 U.S.C. § 227(c). During the early 1990's, Congress passed the TCPA that set up a national database to list telephone numbers that did not want to receive solicitation calls pursuant to 47 U.S.C. § 227(c)(3). As discussed supra, Mr. McKevitz registered his cell number on the National Do-Not-Call list years before he received the first solicitation call from the Defendants.

Defendants ignored the readily available National Do-Not-Call list and proceeded to solicit Mr. McKevitz on 24 separate occasions. The recipient of a telemarketing call, regardless of the call being a robocall or placed an actual person, has a private right of action when more than one telephone solicitation occurs within any 12-month period pursuant to 47 U.S.C. 227(c)(5). This action is independent of the abovementioned auto-dialer and provides additional damages.

Here, the Defendants, or its agents, initiated telephone solicitation on 24 separate occasions from April 13, 2015 to November 30, 2017. The time between the numerous solicitations was less than 12 months. Therefore, Defendants violated the Act on 24 separate occasions. A defense to this particular private right of action is for the telemarketer to establish and implement, "with due care, reasonable practices and procedures to effectively prevent telephone solicitations" pursuant to 47 U.S.C. 227(c)(5)(C). Typically, reasonable practices include the solicitor developing its own do-

not-call list for the robocall equipment and the live callers. However, Defendants have a track record of ignoring due care with its practices and procedures.

In addition, Mr. McKevitz, personally and through counsel, asked the Defendants on several occasions, without success, to provide documentation of their telephone solicitation practices and procedures. Obviously, the Defendants have ignored the specific requirements in the Bee, Denning, Inc. order of settlement.

The damages are $500.00 for each illegal call pursuant to 47 U.S.C. 227(c)(5)(B). The court may treble the damages up to $1,500.00 for willful and knowing violations which, in light of the abovementioned, the Defendants are certainly performing willful and knowing violations of Mr. McKevitz's privacy rights. Therefore, the Court should treble the damages for each illegal solicitation pursuant to 47 U.S.C. 227(c)(5)(C).

Mr. Charan posted the following libelous comment on the "Stephen H. Byrd, Attorney-at-Law" Facebook page on January 4, 2018:

> "Stephen H. Byrd and Andrew McKevitz of Montvale Air Park abuse the legal process and employ extortion and harassment tactics for profit. They systematically leverage the cost and inconvenience of the legal process to force business owners to pay money for frivolous claims. Please contact me for details".

This written publication falsely accuses Mr. McKevitz of being an extortionist and one that practices harassment. In addition, the post encourages others to contact Mr. Charan so he can further slander Mr. McKevitz.

Mr. Charan recklessly disregarded the truth with these attacks on Mr. McKevitz's character. The post was intended to harm Mr. McKevitz's reputation by lowering him in the estimation of the community and by detering third persons from associating or dealing with him. In addition, Mr.

Page 4 of 9

Case 3:18-cv-00131-JRG-HBG   Document 28   Filed 07/03/18   Page 5 of 10   PageID #: 170

not-call list for the robocall equipment and the live callers. However, Defendants have a track record of ignoring due care with its practices and procedures.

In addition, Mr. McKevitz, personally and through counsel, asked the Defendants on several occasions, without success, to provide documentation of their telephone solicitation practices and procedures. Obviously, the Defendants have ignored the specific requirements in the Bee, Denning, Inc. order of settlement.

The damages are $500.00 for each illegal call pursuant to 47 U.S.C. 227(c)(5)(B). The court may treble the damages up to $1,500.00 for willful and knowing violations which, in light of the abovementioned, the Defendants are certainly performing willful and knowing violations of Mr. McKevitz's privacy rights. Therefore, the Court should treble the damages for each illegal solicitation pursuant to 47 U.S.C. 227(c)(5)(C).

Mr. Charan posted the following libelous comment on the "Stephen H. Byrd, Attorney-at-Law" Facebook page on January 4, 2018:

> "Stephen H. Byrd and Andrew McKevitz of Montvale Air Park abuse the legal process and employ extortion and harassment tactics for profit. They systematically leverage the cost and inconvenience of the legal process to force business owners to pay money for frivolous claims. Please contact me for details".

This written publication falsely accuses Mr. McKevitz of being an extortionist and one that practices harassment. In addition, the post encourages others to contact Mr. Charan so he can further slander Mr. McKevitz.

Mr. Charan recklessly disregarded the truth with these attacks on Mr. McKevitz's character. The post was intended to harm Mr. McKevitz's reputation by lowering him in the estimation of the community and by detering third persons from associating or dealing with him. In addition, Mr.

Charan intended to prejudice Mr. McKevitz's trade and business by intentionally mentioning his involvement with Montvale Air Park.

Plaintiffs believe that this libelous post was in fact posted by Defendant Narin Charanvattanakit aka Narin Charan. The Facebook name that created the post was "Narin Charan." Mr. Charan admitted that his alias is "Naran Charan" in document 14 of David Meyer, et al. v. Capital Alliance Group, et al, United States District Court, Southern District of California, 14-cv-2405 (another class action lawsuit against Mr. Charan also relating to violations of TCPA that was settled). In addition, the "Naran Charan" Facebook page lists www.CapitalAlliance.com as a related website, which is the website for Defendant Capital Alliance Group.

## II. CONSENT TO UNITED STATES MAGISTRATE JUDGE

Assuming Defendants' motion to transfer venue is denied, all parties consent to having this matter heard by a magistrate judge for all purposes.

## III. MOTIONS

### A. Status of Pending Motions

Defendants' motion to transfer this Action has been filed, fully answered by the Plaintiff and awaiting this Court's decision.

### B. Anticipated Pretrial Motions

None.

## V. AMENDMENT OF PLEADINGS

### A. Plaintiff's Contentions

The Plaintiff's Complaint does not need to be amended.

## VI. EVIDENCE PRESERVATION

The parties will be working to meet and confer regarding effective and efficient protocols for the collection of necessary electronically stored information ("ESI") from all parties. The parties are

aware of their obligations to preserve discoverable materials potentially relevant to this action and have taken steps to preserve it.

## VII. DISCLOSURES

The parties agree that they will exchange their Rule 26(a)(1) initial disclosures within 30 days from any order by this Court denying Defendants' motion to transfer.

Because Defendants will be producing substantive information (as opposed to merely identifying) with their initial disclosures, the parties anticipate entry of a suitable stipulated protective order prior to production.

## VIII. DISCOVERY

### A. Format of Production of Documents

The parties agree to produce documents via CD or FTP site as single-page TIFF images with OCR load files, but reserve the right to request specific materials in native or other format, and/or with metadata attached. The parties also agree that production of less than 15 pages of documents may be done via email as PDF files.

### B. Discovery Subjects

#### 1. Plaintiff's Contentions:

In their Rule 26(a)(1) initial disclosures, Plaintiff intends to fully disclose evidence of calls Plaintiff also intends to pursue written and deposition discovery from Defendants, and relevant third parties regarding the following discovery subjects:

(1) Telemarketing calls made by the Defendants;

(2) Companies, services, etc. utilized by the Defendants for telemarketing services; and,

(3) The policies by Defendants to prevent violations of the Telephone Marketing Consumer Protection Act.

Plaintiff reserves the right to conduct additional discovery if necessary based upon facts learned during discovery.

    C.    **Limitations on Discovery**

The parties did not agree to any limitations upon discovery relating to whether Defendants utilized ATDS. The Complaint pleads numerous violations of the TCPA and other matters that are each independent of each other.

    D.    **Stipulated Protective Order**

The parties anticipate the entry of a stipulated protective order for confidential, proprietary, trade secret, and other protected materials.

    C.    **Electronically Stored Information**

The parties intend to negotiate electronic and hard copy discovery protocols and procedures in order to effectuate the most cost effective and expeditious discovery plan.

    D.    **Claims of Privilege**

The parties anticipate that the proposed stipulated protective order will contain a clawback provision for inadvertently produced privileged materials.

The parties agree that Defendants only be required to produce a privilege log for materials created prior to the filing of the initial Complaint.

**XII.**    **SETTLEMENT AND ADR**

    A.    **Plaintiff's Contentions:**

Plaintiff is agreeable to reasonable settlement and ADR.

**XVII.**  **SCHEDULING**

*See* Exhibit A, attached hereto, for Proposed Pretrial and Trial Schedule.

XVIII. **TRIAL**

The parties presently estimate that trial in this action will be approximately three (3) days.

XX. **OTHER MATTERS**

None at this time.

Dated July 3, 2018

Respectfully submitted,

*Stephen H. Byrd*

Stephen H. Byrd, (BPR # 030014)
9051 Executive Park Drive
Suite 200
Knoxville, Tennessee 37923
Tel: 865-250-1968
Fax: 865-675-1970
BunkyByrd@gmail.com

ATTORNEY FOR PLAINTIFF

# EXHIBIT A

## [PROPOSED] PRETRIAL CALENDAR

| Matter | Proposed Deadline |
|---|---|
| Fact (Non-Expert) Discovery Deadline | January 18, 2019 |
| Opening Expert Witness Disclosure and Reports (filed simultaneously by the parties) | February 8, 2019 |
| Rebuttal Expert Witness Disclosure | March 1, 2019 |
| Expert Discovery Deadline | March 29, 2019 |
| Deadline for Filing Dispositive Motions | May 3, 2019 |